**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BISHOP DISPLAY TECH LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No. 2:26-cv-711** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **HKC CORPORATION LTD.; CHONGQING HKC OPTOELECTRONICS TECHNOLOGY CO., LTD.; HKC OVERSEAS LTD.; AND SHENZEN KOORUI TECHNOLOGY CO., LTD.,** | § § § § § § | |
| **Defendants.** | | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Bishop Display Tech LLC ("Bishop" or "Plaintiff") files this Complaint against Defendants HKC Corporation Ltd. ("HKC Corp."), Chongqing HKC Optoelectronics Technology Co., Ltd. ("Chongqing HKC"), HKC Overseas Ltd. ("HKC Overseas"), and Shenzhen Koorui Technology Co., Ltd. ("Koorui") (collectively "HKC" or "Defendants") for infringement of U.S. Patent No. 7,583,347 (the "'347 patent"), U.S. Patent No. 7,414,682 (the "'682 patent"), U.S. Patent No. 7,995,047 (the "'047 patent"), and U.S. Patent No. 8,093,830 (the "'830 patent") (collectively, the "Asserted Patents").

**THE PARTIES**

1. Plaintiff is a Texas limited liability company with its principal place of business in the Eastern District of Texas.

2. HKC Corp. On information and belief, HKC Corp. is corporation organized under the laws of China with a principal place of business at Factory Building 1, Floors 1–3 and 5–7, and Building 6, Floor 7, HKC Industrial Park, No. 1 Gongye 2nd Road, Shilong Community, Shiyan Street, Bao'an District, Shenzhen, Guangdong Province, 518108, P.R. China. On

information and belief, HKC Corp. makes, sells, offers to sell, distributes, and/or imports and has made, sold, offered to sell, distributed, and/or imported accused products (e.g., TFT-LCD displays and/or LCMS) for display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States. On information and belief, HKC Corp. wholly owns, directs, and controls and has wholly owned, directed, and controlled HKC Overseas and Koorui. On information and belief, HKC Corp. owns and has owned a majority interest in Chongqing HKC. On information and belief, HKC Corp. owns, directs, and controls and has owned, directed, and controlled Chongqing HKC.

3. On information and belief, HKC Corp. and/or its foreign or U.S.-based subsidiaries have a global supply chain for selling and importing display products, including TFT-LCDs/LCMs found in display products (e.g., phones, TVs, laptops, tablets, monitors), in the United States. As stated on HKC's website, "as a world-renowned integrated service provider of display solutions, HKC has four G8.6TFT-LCD high generation production lines and one G5.5 OLED Production Line with different technical characteristics." https://www.hkcglobal.net/semiconductor.html. "At present, [HKC] has realized the mass production of various application fields such as TV, monitor, pen, tablet computer, mobile phone, vehicle, industrial control, etc., and continues to expand new application fields such as electronic paper, medical, outdoor display." *Id*. And HKC further states, "[a]ccording to Sigmaintell data show that in 2023, the company's LCD TV panel shipments, display panel shipments, and smartphone panel shipments ranked third, fifth and third in the world respectively." *Id*. HKC additionally touts its "hundreds of billions of display panel industry chain" with TFT-LCD production lines in Chongqing, Chuzhou, Mianyang, and Changsha. *Id*. "HKC operates four strategically specialized G8.6 TFT-LCD production lines, enabling volume production across all major display applications including televisions, monitors, laptops, tablets,

smartphones, e-paper devices, automotive displays, industrial control panels, medical equipment, outdoor digital signage, video walls and interactive whiteboards." https://www.hkcglobal.net/about.html. "Through its multi-technology development approach, HKC maintains leadership in conventional a-Si TFT-LCD while achieving mass production of Oxide TFT-based monitor and notebook panels, developing next-gen OLED displays for Gen 8.6 applications, and innovating in Mini LED technology with commercially available COB products." *Id*. HKC "partner[s] with global technology leaders including … HP, Dell, Sony, Lenovo, Xiaomi, TPV, TCL, Haier, Hisense, and Vestel." *Id*. HKC further states, "[o]verseas, in the United States, the United Kingdom, South Korea, Japan, Singapore, the Netherlands, Indonesia, Ghana, Latvia and other countries and regions have industrial layout, products are sold to more than 100 countries around the world, its service system covers Europe, America, Asia, Africa and other major regions of the world." *Id*.

4. On information and belief, Innoview American Limited ("Innoview") is a California company with its principal place of business at 1510 N. White Ave., Suite A, La Verne, California 91750. Innoview's website, product literature, and product labels demonstrate that HKC sells for importation, imports, offers for sale, and/or sells after importation accused HKC TFT-LCDs and/or LCMs in the United States. On information and belief, Innoview is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls Innoview.

5. On information and belief, Koorui American Limited ("USA Koorui") is a New York company with its principal place of business at 90 State Street, Suite 700, Office 40, Albany, New York 12207. USA Koouri's website, product literature, and product labels demonstrate that HKC sells for importation, imports, offers for sale, and/or sells after importation accused HKC

TFT-LCDs and/or LCMs in the United States. On information and belief, USA Koorui is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls USA Koorui.

6. On information and belief, HKC Corp., Innoview, USA Koorui, HKC Overseas, and the other named Defendants, and/or their respective subsidiaries, affiliates, and related companies sells, offers to sell and/or imports and have sold, offered to sell, and/or imported accused HKC TFT-LCDs and/or LCMs in the United States. *See, e.g.*, https://www.designinnoview.com/products/; https://koorui.com/collections/all; https://www.hkcglobal.net/semiconductorinfo31.html; https://www.hkcelec.com/product/1.html.

7. <u>Chongqing HKC</u>. On information and belief, Chongqing HKC is a Chinese limited liability company formed under the laws of China with a principal place of business at No. 1 Shijing Road, Jieshi Town, Banan District, Chongqing, 401320, P.R. China. On information and belief, Chongqing HKC is a subsidiary HKC Corp., such that HKC Corp. owns a controlling interest of Chongqing HKC. On information and belief, HKC Corp. owns, directs, and controls Chongqing HKC. On information and belief, Chongqing HKC makes, sells, offers to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States.

8. <u>HKC Overseas</u>. On information and belief, HKC Overseas is a corporation organized under the laws of Hong Kong with a principal place of business at Unit 8, 28/F, W50, 50 Wong Chuk Hang Road, Wong Chuk Hang, Hong Kong. On information and belief, HKC Overseas is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls HKC Overseas. On information and belief, HKC Overseas makes, sells, offers to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for

display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States. *See, e.g.*, https://www.hkcelec.com/product/1.html.

9. Koorui. On information and belief, Koorui is a company organized under the laws of the People's Republic of China having a regular and established place of business at 5th Floor, Factory Building 6, Huike Industrial Park, No. 1 Industrial 2nd Road, Shilong Community, Shiyan Street, Baoan District, Shenzhen, Guangdong, 518108, P.R. China. On information and belief, Koorui is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls Koorui. On information and belief, Koorui makes, sells, offers to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) and/or display devices (e.g., monitors) destined for the United States.

10. On information and belief, each of the named Defendants are part of an interrelated group of companies that together comprise one of the world's largest manufacturers and/or distributors of TFT-LCDs/LCMs; these entities are therefore collectively referred to herein as "HKC." For example, HKC refers to itself and its interrelated companies as the "HKC Group" or "the company." https://koorui.com/pages/about-us ("KOORUI is a new technology fashion brand under HKC Group, an industry giant in semiconductor display industry in China."); *id*. ("Depends on HKC group years of R&D, raw material, craftsmanship, high quality customer service, perfect supply chain management & cost optimization, KOORUI is capable of entering WW customer electronic market."); *id*. ("HKC Group HKC is an intelligent manufacturing and semiconductor technology R&D group, focusing on semiconductor display core components, intelligent IoT solutions, and vertical integration of the display industry chain.“); *id*. ("The company with the most vertically integrated domestic display industry chain.“); https://www.hkcglobal.net/semiconductor.html ("According to Sigmaintell data show that in

2023, the company's LCD TV panel shipments, display panel shipments, and smartphone panel shipments ranked third, fifth and third in the world respectively.”).

11. Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing their respective subsidiaries, affiliates, distributors, suppliers, business partners retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the following products accused of infringement (the “Accused Products”):

- HKC thin-film transistor liquid crystal displays (“TFT-LCDs”) for display products;
- HKC liquid crystal modules comprising TFT-LCDs (collectively, “LCMs”) for display products;
- Products comprising HKC TFT-LCDs or LCMs; and
- Components of the foregoing.

12. On information and belief, HKC Corp. wholly owns (or has majority ownership), directs, and controls and has wholly owned (or had majority ownership), directed, and controlled the other named Defendants, Innoview, USA Koorui, as well as many other subsidiaries and affiliates. On information and belief, HKC Corp., Chongqing HKC, HKC Overseas, Koorui, USA Koorui, and Innoview are, and have been, agents of HKC Corp. On information and belief, these companies share the same offices, leadership, employees, logos, and business. At the direction and control of HKC Corp., Chongqing HKC, HKC Overseas, Koorui, USA Koorui, and Innoview makes (and has made) and/or supplies (and has supplied) TFT-LCDs and LCMs that are (and have been) incorporated into end user products destined for the United States. As stated on HKC’s website, “Domestically, [HKC] has established production and research and development bases in

Shenzhen, Chongqing, Jiezhou, Mianyang, Changsha, Hefei, Yichang, Beihai, Shanghai and other places." https://www.hkcglobal.net/about.html And HKC further states, "[o]verseas, in the United States, the United Kingdom, South Korea, Japan, Singapore, the Netherlands, Indonesia, Ghana, Latvia and other countries and regions have industrial layout, products are sold to more than 100 countries around the world, its service system covers Europe, America, Asia, Africa and other major regions of the world." *Id*.

13. On information and belief, each of the Defendants, USA Koorui, Innoview, and other HKC companies are, and have been, agents of HKC Corp. For example, each of the Defendants and their subsidiaries use the same logo and/or reference HKC, further emphasizing that these companies are alter egos and/or agents of one another. All HKC entities, including the named Defendants and each of their respective affiliates, parents, and subsidiaries, are related companies, affiliates, and have more than close relationships with one another.

14. On information and belief, Defendants, including along with other foreign and U.S.-based subsidiaries or agents (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Defendants) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Defendants conduct business in the United States, including importing, distributing, and selling the Accused Products that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district.

15. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products with distributors and customers operating in and maintaining a significant business presence in the U.S., Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

16. Defendants operate (and have operated) in agency with its respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this District and the U.S. nationally. HKC and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and has directed) the Accused Products into established distribution channels within this District and the U.S. nationally.

17. On information and belief, HKC including its respective U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. HKC and its U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

18. On information and belief, the Defendants share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and infringing product lines and products involving related technologies. On information and belief, Defendants operate (and have operated) as a single business entity and/or in concert with their respective affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Accused Products in the United States, including in the State of Texas generally and this District in particular.

19. On information and belief, Defendants and their U.S. and foreign subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

20. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Defendants are operating in (and have operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, Defendants have done (and do) business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

21. Plaintiff incorporates paragraphs 1 through 20 herein by reference.

22. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24. Venue is proper for Defendants in this District pursuant to 28 U.S.C. §§ 1391(c). Defendants are foreign entities and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

25. This Court has general and specific personal jurisdiction over the Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) the Defendants have done and continue to do business in Texas and/or (ii) the Defendants have, directly and through intermediaries, distributers, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by Internet sales and/or sales via business partners, retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and District (including, as relevant, in the past), including: (A) conducting at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

26. In addition, Defendants have subsidiaries and employees in the United States.

27. In addition, Defendants are aware that the Accused Products are imported to, shipped to, offered for sale, sold, and used in the United States given that they obtain UL Solutions certifications for the Accused Products so that they comply with the laws and regulations of the United States. For example, an Accused Product Koorui model no. 24N1 includes Accused Product HKC LCM/LCD model no. PN238CT02-14, which includes a UL Solutions mark indicating compliance with the laws and regulations of the United States:




On information and belief, Defendants imported, distributed, offered for sale, sold, and/or used Accused Product HKC LCM/LCD model no. PN238CT02-14 and all series of HKC LCM/LCD model no. PN238CT02-14 (e.g., PN238CT02-1, PN238CT02-2, etc.) and/or induced others to import, distributed, offer for sale, sell, and/or use Accused Product HKC model no. PN238CT02-14 and all series of HKC LCM/LCD model no. PN238CT02-14 in the United States at least by early 2020. On information and belief, the accused series of HKC LCM/LCD model no. PN238CT02 (e.g., PN238CT02-1, PN238CT02-2, etc.) have been incorporated into display products (e.g., Acer Aspire C24 series, Dell Inspiron and OptiPlex series, Koorui monitors, Phillips monitors, and/or AOC monitors) that have been made, offered for sale, sold, used, tested, and/or imported in the United States since at least early 2020. Also, given the long history of HKC as one of the main suppliers of display components incorporated in third party end user electronic devices, HKC has knowledge that it and third party customers have substantial operations in the United

States, as well as substantial market share in the United States market for LCD displays; Defendants are well-aware that the Accused Products are destined for the United States and Texas (e.g., via the such entities' supply chains, distributers, retailers, etc.). Indeed, the U.S. market for the Accused Products is substantial:




28. This Court has personal jurisdiction over each of the Defendants, directly or through agents, intermediaries, distributors, importers, business partners, customers, subsidiaries, and/or consumers. Through direction and control (including, as relevant, in the past) of such subsidiaries, affiliates, business partners, distributors, retail partners, agents, and/or customers, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over each of the Defendants would not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendants compensate their U.S.-based subsidiaries and/or agents for their sales and/or technical support services in the United States. As such, Defendants have a direct financial interest in their U.S.-based subsidiaries and/or agents, and/or partners, distributers, or customers, and vice versa.

29. Personal jurisdiction is proper because each of the Defendants has committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, inter alia, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

30. Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiff who resides in this District.

31. In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

32. For example, the websites of Defendants and their U.S.-based subsidiaries advertise the type of components and Accused Products that are infringing in this case. *See, e.g.*, https://www.designinnoview.com/products/; https://koorui.com/collections/all; https://www.hkcglobal.net/semiconductorinfo31.html; https://www.hkcelec.com/product/1.html.

33. Personal jurisdiction also exists specifically over Defendants because Defendants, directly or through affiliates, subsidiaries, business partners, agents, and/or intermediaries, transact business (or have transacted business) in this State or purposefully directed business at this State by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

34. To the extent Defendants are not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendants in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

35. In addition, Defendants, directly or through affiliates, subsidiaries, agents, and/or intermediaries, have placed infringing products into the stream of commerce knowing they would be sold and used in Texas, and economically benefit from the retail sale of infringing products in this State, including in this District.

36. Defendants have advertised its infringing products to customers in Texas and this District through its website.

37. On information and belief, Defendants control (or have controlled) or otherwise direct (or directed) and authorizes (or authorized) all activities of their respective U.S.-based (or foreign-based with the knowledge that the Accused Products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Defendants researched, designed, developed, and manufactured the Accused Products, and then directed their respective U.S.-based (and/or foreign-based) sales subsidiaries, distributers, business partners agents, and/or others to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui*

*Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, Defendants conducted infringing activities, and Defendants' U.S.-based (and foreign-based) sales subsidiaries and/or distributers and/or agents and/or business partners conducted infringing activities on behalf of Defendants.

38. On information and belief, Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Defendants substantially the same business advantages that it would have enjoyed if Defendants conducted their business through its own offices or paid agents. Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or distributers and/or agents were authorized to import, distribute, sell, and offer for sale Defendants' products, including the Accused Products, as well as their components and processes related to the same, on behalf of Defendants. For example, Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Defendants' global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

39. Via Defendants' alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas including within this District. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the

buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute an offer to sell under § 271(a)).

40. On information and belief, Defendants have placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Defendants have, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

41. The minimum contacts test is satisfied because Defendants deliver products (e.g., TFT-LCDs and/or LCMs) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)). For example, and on information and belief (and as provided for herein), Defendants import, and/or have imported and/or shipped infringing Accused Products into the United States through and with their respective U.S. subsidiaries and/or affiliates and/or agents and/or supply chain partners and/or customers. Defendants supply their Accused Products (e.g., TFT-LCDs and/or LCMs) to their customers, subsidiaries, affiliates, agents, and/or distributors knowing that HKC TFT-LCDs and/or

LCMS will be incorporated into accused downstream display products (e.g., laptops, phones, tablets) that are offered for sale, sold, imported, and/or used by Defendants, their subsidiaries and interrelated companies, their customers, Best Buy, Walmart, and/or Amazon in the United States and this District. The Accused Products were (and are) directed to this District and were (and are) available for purchase in this District via retailers, such as Best Buy, Walmart, and Amazon. The lengthy and complex distribution chain does not insulate Defendants from suit in Texas.

42. Defendants intentionally placed and place HKC TFT-LCDs and/or LCMs in third party display products (e.g., Hisense TVs, TCL TVs, Vizio TVs, Acer laptops. Dell laptops, Phillips monitors, AOC monitors etc.) as well as HKC, Koorui, and Innoview display products in a distribution chain flowing from Asia to the United States, Texas, and this District. For example, Defendants intentionally place the HKC TFT-LCDs and/or LCMs and/or display products in a distribution or supply chain knowing that such Accused Products ultimately arrive in the United States market and this District through, at least, its direct and/or indirect customers' display devices (e.g., l phones, TVs, laptops, tablets, monitors, etc.). Defendants, through their sales of HKC TFT-LCDs and/or LCMs for application in downstream display devices, such as phones, TVs, laptops, tablets, and/or monitors, knew (or should have reasonably known) the likely destination of the products, where Defendants' conduct and connections with Texas and this District were such that each of the Defendants should have reasonably anticipated being brought to court in this District. Indeed, HKC's TFT-LCDs and or LCMs and the respective downstream display devices typically include a UL Solutions mark indicating compliance with the laws and regulations of the United States further evidencing that Defendants knew or should have known that its products were destined for the United States and this District.

43. Moreover, Defendants are the assignee of a substantial number of United States patents and patent applications, including use of U.S. patent counsel to procure such patents in their name. Thus, Defendants sought out the United States market, evidenced by seeking patent protection in the United States.

44. Also by way of example, and on information and belief, Defendants have (and have had) U.S. based (and/or foreign-based) employees that work in connection with the Accused Products.

45. HKC has and had a commercial relationship with significant players in the electronic display industry (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon), and HKC accessed the Texas consumer-electronics market vis-à-vis those relationships. Given HKC's relationship with such entities, which are behemoths for display products in the United States market, jurisdiction in this Court is fair and reasonable. Thus, jurisdiction in this Court is fair and reasonable for HKC.

46. In the alternative, the Court has personal jurisdiction over each of the Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, each of the Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over each of the Defendants is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given each of the Defendants' purposeful availment from the sales of HKC's TFT-LCDs and/or LCMs sold in the Unites States and this District in addition to third party display products (e.g., phones, TVs, laptops, tablets, monitors) incorporating HKC's TFT-LCDs and/or LCMs sold in the Unites States and this District.

**COUNT I**
**(Infringement of U.S. Patent No. 7,583,347)**

47. Plaintiff incorporates paragraphs 1 through 46 herein by reference.

48. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

49. Plaintiff is the owner of the ’347 patent with all substantial rights to the ’347 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

50. The ’347 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

51. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the ’347 patent in this District and elsewhere in Texas and the United States.

52. Defendants, collectively and/or individually, directly infringed the ’347 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’347 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’347 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’347 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and

belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '347 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '347 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '347 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

53. Furthermore, HKC Corp. directly infringed the ’347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

54. Furthermore, Chongqing HKC directly infringed the ’347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

55. Additionally, HKC Overseas directly infringed the ’347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

56. Additionally, Koorui directly infringed the ’347 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’347 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Koorui has (and

has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

57. For example, Defendants infringed claim 1 of the ’347 patent. The products accused of infringing the ’347 patent comprise a liquid crystal display. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[1], such that each comprises a liquid crystal display:




58. The products accused of infringing the ’347 patent comprise a liquid crystal panel including an array substrate having an upper surface on which a common electrode, a pixel electrode, a scanning signal line, a video signal line, and a semiconductor switching device are

[1] On information and belief, HKC PN238CT02-14 includes the same relevant structure and functionality as the entire series of HKC LCM/LCMD model no. PN238CT02 (e.g., PN238CT02-1, PN238CT02-2, PN238CT02-3, etc.) that have been made, offered for sale, sold, used, tested, and/or imported and/or included in other display products made, offered for sale, sold, used, tested, and/or imported in the United States since at least early 2020.

formed, an opposing substrate disposed so as to be opposite to the upper surface of the array substrate, and a liquid crystal layer disposed between the array substrate and the opposing substrate. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:









59. The products accused of infringing the ’347 patent comprise a reflecting face formed below the liquid crystal panel, wherein a light reflected on the reflecting face is transmitted through the liquid crystal panel. The configuration of the products accused of infringing the ’347 patent is such that light reflected on the reflecting face is transmitted through the liquid crystal

panel (the reflecting face is beneath the diffuser in the below illustration). For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




60. The products accused of infringing the '347 patent are configured such that at least one electrode of the common electrode and the pixel electrode is constituted by an electrode portion and a wiring portion. For example, the pixel electrode is constituted by an electrode portion and a wiring portion. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:


Array substrate
Electrode portion of pixel electrode
Wiring portion of pixel electrode


Array substrate
Electrode portion of common electrode
Wiring portion of common electrode

61. The products accused of infringing the '347 patent are configured such that the electrode portion is at least partially constituted by a transparent electric conductor. For example, the pixel electrode portion is at least partially constituted by a transparent electric conductor. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




62. The products accused of infringing the '347 patent are configured such that the pixel electrode portion is formed in a layer separated by an insulating layer from a layer in which the scanning signal line is formed, and the pixel wiring portion is formed in the layer in which the scanning signal line is formed. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:







63. At a minimum, each of the Defendants has known about the ’347 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’347 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside

of HKC's infringement of the '347 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the "Company") of the Company's infringing activity of the '347 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '347 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '347 patent from at least the foregoing dates that HKC Overseas was on notice of the '347 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[2]

64. On information and belief, Defendants' conduct before the United States Patent and Trademark Office and/or foreign patent offices, suggest that it was aware of the '347 patent and their infringement prior to receiving the HKC Notice Letter. For example, in prosecuting U.S.

---

[2] *See e.g., Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00495-JRG-RSP, 2025 U.S. Dist. LEXIS 206502, at *28-30 (E.D. Tex. Oct. 3, 2025) ("where there is a close relationship between a non-defendant third party and a defendant, giving notice to the former can constitute notice to the latter, at least insofar as it creates a genuine dispute of material fact. … we are satisfied that SDC's relationship with the named Defendants here suffices, such that whether Plaintiff's notice to the former constitutes notice to Defendants is an issue that the trier of fact will resolve."); *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan of N. Am.*, No. 11-11039, 2012 U.S. Dist. LEXIS 117941, at *14 (E.D. Mich. Aug. 21, 2012) ("Defendants argue the sheer implausibility of an automotive supplier informing its customers that it is supplying infringing products to them. Without a fully developed factual record however, the court cannot conclude that it is unreasonable to infer that defendants Toyota and Nissan received pre-suit knowledge of the patents-in-suit from their suppliers. A reasonable inference can be made that a supplier of an accused infringing instrumentality, with direct notice of the patents-in-suit, discussed said patents and the likelihood of infringement of these patents with its customers. It is also a reasonable inference that a Japanese parent company, Honda Motor Company, which received NISTAC's letter concerning the patents-in-suit, would communicate with its United States subsidiary, American Honda, about these patents and potential infringement thereof.").

Patent Publication No. 20200124924, HKC Corp. has known of at least the ’682 patent. On information and belief, HKC Corp. also knew of the ’347 patent, which is related to the ’682 patent. On information and belief, HKC Corp. is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants by owning and controlling other Defendants. Based on information and belief, each of the other named Defendants were on notice of the ’347 patent from at least the foregoing dates that HKC Corp. was on notice of the ’347 patent as a result of HKC Corp. receiving notice and/or Defendants receiving notice from HKC Corp.[3] On information and belief, Defendants actively monitored and/or analyzed the claims and their infringement of LCD patents, especially LCD patents originally owned by a competitor and/or company within the same or similar technological space. On information and belief, each of the Defendants were aware of their infringement of the ’347 patent.

65. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants’ competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE*

[3] *See* FN 2, *supra.*

*Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

66. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '347 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '347 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with

U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

67. On information and belief, despite having knowledge of the '347 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '347 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing

the ’347 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’347 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’347 patent in the United States.

68. Defendants’ infringement of the ’347 patent has been willful and with full knowledge of the ’347 patent. Upon information and belief, despite having knowledge of the ’347 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’347 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’347 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

69. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants’ infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70. On information and belief, the prior patent owners of the ’347 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or

applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '347 patent.

**COUNT II**
**(Infringement of U.S. Patent No. 7,414,682)**

71. Plaintiff incorporates paragraphs 1 through 70 herein by reference.

72. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

73. Plaintiff is the owner of the '682 patent with all substantial rights to the '682 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

74. The '682 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

75. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '682 patent in this District and elsewhere in Texas and the United States.

76. Defendants, collectively and/or individually, directly infringed the '682 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '682 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '682 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '682 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously

liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '682 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '682 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control

its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

77. Furthermore, HKC Corp. directly infringed the ’682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

78. Furthermore, Chongqing HKC directly infringed the ’682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to

control those entities' infringing acts and receives a direct financial benefit from their infringement.

79. Additionally, HKC Overseas directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

80. Additionally, Koorui directly infringed the '682 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '682 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

81. Defendants infringed claim 7 of the ’682 patent. The products accused of infringing the ’682 patent comprise a liquid crystal display of transversal electric field type. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[4], such that each comprises a liquid crystal display of transversal electric field type:




82. The products accused of infringing the ’682 patent comprise a liquid crystal panel in which liquid crystal is retained between a pair of substrates. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:

[4] *See* FN 1, *supra*.




83. The products accused of infringing the ’682 patent comprise a plurality of scanning signal lines and a plurality of video signal lines formed so as to define a plurality of pixels in a matrix on an inner surface of one of the pair of substrates. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




84. The products accused of infringing the ’682 patent comprise a pixel electrode and a common electrode formed opposite to each other in each pixel in a plan view. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




85. The products accused of infringing the ’682 patent are configured such that an image is displayed on the liquid crystal panel by inputting a video signal from the video signal line

into the pixel electrode while sequentially selecting the pixel through the scanning signal line. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:

liquid crystal panel







https://www.intechopen.com/books/new-developments-in-liquid-crystals/active-matrix-liquid-crystal-displays-operation-electronics-and-analog-circuits-design




86. The products accused of infringing the '682 patent are configured such that at least one of the scanning signal lines, the video signal lines, the pixel electrode, or the common electrode is at least partially constituted by a light-transmitting conductive layer and a light-non-transmitting conductive layer. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates that the pixel electrode is at least partially constituted by a light-transmitting conductive layer and a light-non-transmitting conductive layer:



87. The products accused of infringing the ’682 patent are configured such that a width of the light-transmitting conductive layer is wider than a width of the light-non-transmitting layer. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




88. At a minimum, each of the Defendants has known about the ’682 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’682 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC’s infringement of the ’682 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the “Company”) of the Company’s infringing activity of the ’682 patent via the Company’s making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the ’682 patent and other patents in its portfolio to abate the Company’s infringement. The HKC

Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the ’682 patent from at least the foregoing dates that HKC Overseas was on notice of the ’682 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[5]

89. On information and belief, Defendants’ conduct before the United States Patent and Trademark Office and/or foreign patent offices, suggest that it was aware of the ’682 patent and their infringement prior to receiving the HKC Notice Letter. For example, in prosecuting U.S. Patent Publication No. 20200124924, HKC Corp. has known of the ’682 patent. On information and belief, HKC Corp. is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants by owning and controlling other Defendants. Based on information and belief, each of the other named Defendants were on notice of the ’682 patent from at least the foregoing dates that HKC Corp. was on notice of the ’682 patent as a result of HKC Corp. receiving notice and/or Defendants receiving notice from HKC Corp.[6] On information and belief, Defendants actively monitored and/or analyzed the claims and their infringement of LCD patents, especially LCD patents originally owned by a competitor and/or company within the same or similar technological space. On information and belief, each of the Defendants were aware of their infringement of the ’682 patent.

---

[5] *See* FN 2, *supra.*

[6] *See* FN 2, *supra.*

90. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

91. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '682 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '682 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating

advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions

certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

92. On information and belief, despite having knowledge of the '682 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '682 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '682 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '682 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '682 patent in the United States.

93. Defendants' infringement of the '682 patent has been willful and with full knowledge of the '682 patent. Upon information and belief, despite having knowledge of the '682 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '682 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '682 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

94. Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95. On information and belief, the prior patent owners of the '682 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '682 patent.

## COUNT III
## (Infringement of U.S. Patent No. 7,995,047)

96. Plaintiff incorporates paragraphs 1 through 95 herein by reference.

97. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

98. Plaintiff is the owner of the '047 patent with all substantial rights to the '047 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

99. The '047 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

100. Defendants, collectively and/or individually, have infringed and continue to infringe literally, and/or under the Doctrine of Equivalents, one or more claims of the ’047 patent in this District and elsewhere in Texas and the United States.

101. Defendants, collectively and/or individually, have infringed and continue to infringe the ’047 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’047 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’047 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’047 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries’ infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those

products for sale in the United States, thereby directly infringing the ’047 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the ’047 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’047 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, the Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

102. Furthermore, HKC Corp. directly infringed and continues to infringe the ’047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories)

because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

103. Furthermore, Chongqing HKC directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

104. Furthermore, HKC Overseas directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries,

related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Overseas has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

105. Additionally, Koorui directly infringed and continues to infringe the '047 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '047 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

106. For example, Defendants infringe claim 1 of the '047 patent. The products accused of infringing the '047 patent comprise a current driving device. For example, Koorui's monitor model no. 24N1 includes HKC's LCM/LCD model no. HKM238FJ02/PN238CT02-14[7], which includes HKC's power supply board model no. HKCMNT NT68830-B, such that each comprises a current driving device:

[7] *See* FN 1, *supra*.

LCM label




Koorui 24N1




HKC Power supply board of HKC LCM




107. The products accused of infringing the ’047 patent comprise a first voltage supply source for supplying a first voltage. An examination of HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 demonstrates this:




108. The products accused of infringing the ’047 patent comprise a first current supply source for supplying a first electric current. An examination of HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 demonstrates this:



109. The products accused of infringing the ’047 patent comprise a plurality of output terminals. An examination of HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 demonstrates this:




110. The products accused of infringing the ’047 patent comprise a plurality of current output circuits for outputting an electric current in accordance with said first electric current, each of said current output circuits comprising a current-voltage converting circuit, a voltage-current converting circuit, a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal. An examination of the HKC’s power supply board model no. HKCMNT NT68830-B comprising AP3160 chipset included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 demonstrates the presence of a plurality of current output circuits for outputting an electric current in accordance with said first electric current::




111. The products accused of infringing the ’047 patent are configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit. On information and belief, the AP3160 chipset in HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset[8] because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350

[8] The OB3350 chipset document referenced in this Count is marked as Confidential, but it is a public document publicly accessible at https://www.datasheet-pdf.info/attach/1/4578548135.pdf (last accessed August 18, 2026).

chipset, drives a plurality of LEDs of the backlight of an LCM, such that each of the AP3160 chipset and OB3350 chipset is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit:







https://en.eeworld.com.cn/news/qrs/eic664339.html

https://www.datasheet-pdf.info/attach/1/4578548135.pdf

112. The products accused of infringing the ’047 patent are configured such that each of the current output circuits comprise a voltage holding circuit having a terminal being connected to a reference voltage different from the first voltage, and at least one current output terminal. On information and belief, the AP3160 chipset in HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160

chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of LEDs of the backlight of an LCM, such that each of the AP3160 chipset and OB3350 chipset is configured such that each of the current output circuits comprise a current-voltage converting circuit and a voltage-current converting circuit:







https://www.datasheet-pdf.info/attach/1/4578548135.pdf

113. The products accused of infringing the ’047 patent are configured such that each of said current output circuits operates in three operation modes including a voltage supply mode, a current supply mode, and a current output mode. On information and belief, the AP3160 chipset

in HKC's power supply board model no. HKCMNT NT68830-B included in HKC's LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui's monitor model no. 24N1 is configured such that each of the circuits operate in three operation modes, including a voltage supply mode, a current supply mode, and a current output mode. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of LEDs of the backlight of an LCM, such that each of the AP3160 chipset and OB3350 chipset (as demonstrated above and below) is each configured such that each of the circuits operate in three operation modes, including a voltage supply mode, a current supply mode, and a current output mode:




https://en.eeworld.com.cn/news/qrs/eic664339.html

114. The products accused of infringing the '047 patent are configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage

holding circuit. On information and belief, the AP3160 chipset in HKC's power supply board model no. HKCMNT NT68830-B included in HKC's LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui's monitor model no. 24N1 is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage holding circuit. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight of an LCM, such that the AP3160 chipset (and the OB3350 chipset) is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied to another terminal of said voltage holding circuit (even if the first voltage passes through other components first). Furthermore, the AP3160 chipset (and the OB3350 chipset) drives a plurality of channels of LEDs of the backlight of an LCM, such that the AP3160 chipset (and the OB3350 chipset) is configured such that under said voltage supply mode, each of said current output circuits receives said first voltage from said first voltage supply source, and the first voltage is supplied (e.g., sensed and controlled) to another terminal of said voltage holding circuit:







https://en.eeworld.com.cn/news/qrs/eic664339.html




https://en.eeworld.com.cn/news/qrs/eic664339.html https://www.datasheet-pdf.info/attach/1/4578548135.pdf

115. The products accused of infringing the ’047 patent are configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting

circuit, and the first current is supplied to said another terminal of said voltage holding circuit. On information and belief, the AP3160 chipset in HKC's power supply board model no. HKCMNT NT68830-B included in HKC's LCM/LCD model no. HKM238FJ02/PN238CT02-14 is configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting circuit, and the first current is supplied to said another terminal of said voltage holding circuit. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of LEDs of the backlight of an LCM, such that the AP3160 chipset (and the OB3350 chipset) is configured such that under said current supply mode, each of said current output circuits receives said first current from said first current supply source, and generates a second voltage by said current-voltage converting circuit, and the first current is supplied to said another terminal of said voltage holding circuit:






https://en.eeworld.com.cn/news/qrs/eic664339.html

116. The products accused of infringing the ’047 patent are configured such that under said current output mode, each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit. On information and belief, the AP3160 chipset in HKC’s power supply board model no. HKCMNT NT68830-B included in HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 included in Koorui’s monitor model no. 24N1 is configured such that under said current output mode, each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of LEDs of the backlight of an LCM, such that the AP3160 chipset (and the OB3350 chipset) is configured such that under said current output mode,

each of said current output circuits outputs an output current according to said voltage held in said voltage holding circuit by said voltage-current converting circuit:







https://www.datasheet-pdf.info/attach/1/4578548135.pdf

117. At a minimum, Defendants have known of the ’047 patent and their infringement at least as early as the filing date and/or service date of this original complaint. At a minimum, each of the Defendants has known about the ’047 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’047 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC’s infringement of the ’047 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and

subsidiaries (collectively the "Company") of the Company's infringing activity of the '047 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '047 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '047 patent from at least the foregoing dates that HKC Overseas was on notice of the '047 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[9]

118. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE*

[9] *See* FN 2, *supra.*

*Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

119. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, the Defendants have actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the '047 patent to use, offer for sale, sell, use, and/or import the Accused Products. Since at least the notice provided on the above-mentioned dates, the Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '047 patent. The Defendants intend to cause, and has taken affirmative steps to induce infringement by its distributors, importers, testing outfits, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking its Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and

regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, the Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused power supply boards that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, laptops, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the components have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/.

120. On information and belief, despite having knowledge of the '047 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '047 patent. For example, the Defendants specifically intended for its U.S.-based subsidiaries or customers to import and sell products accused of infringing the '047 patent. On information and belief, the Defendants instruct and encourage the importers to import and/or sell products accused of infringing the '047 patent. On information and belief, the purchase and sale agreements between the Defendants and the importers provide such instruction and/or encouragement. Further, on information and belief, the Defendants' U.S.-based subsidiaries exist for inter alia, the purpose of importing and selling products accused of infringing the '047 patent in the United States.

121. The Defendants' infringement of the '047 patent has been willful and with full knowledge of the '047 patent. Upon information and belief, despite having knowledge of the '047 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '047

patent, the Defendants have nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. The Defendants' infringing activities relative to the '047 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

122. Plaintiff has been damaged as a result of the Defendants' infringing conduct described in this Count. The Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for the Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

123. On information and belief, the prior patent owners of the '047 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '047 patent.

## COUNT IV
## (Infringement of U.S. Patent No. 8,093,830)

124. Plaintiff incorporates paragraphs 1 through 125 herein by reference.

125. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

126. Plaintiff is the owner of the '830 patent with all substantial rights to the '830 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

127. The '830 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

128. Defendants, collectively and/or individually, have infringed and continue to infringe literally, and/or under the Doctrine of Equivalents, one or more claims of the ’830 patent in this District and elsewhere in Texas and the United States.

129. Defendants, collectively and/or individually, have infringed and continue to infringe the ’830 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’830 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’830 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’830 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries’ infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those

products for sale in the United States, thereby directly infringing the ’830 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the ’830 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’830 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, the Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

130. Furthermore, HKC Corp. directly infringed and continues to infringe the ’830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories)

because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

131. Furthermore, Chongqing HKC directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

132. Furthermore, HKC Overseas directly infringed and continues to infringe the '830 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '830 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries,

related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Overseas has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

133. For example, Defendants infringe claim 1 of the '830 patent. The products accused of infringing the '830 patent comprise a semiconductor light source driving apparatus. For example, the Koorui's monitor model no. 24N1 includes HKC's LCM/LCD model no. HKM238FJ02/PN238CT02-14[10], such that each comprise a semiconductor light source driving apparatus:




[10] *See* FN 1, *supra.*

134. The products accused of infringing the ’830 patent comprise a semiconductor light source that is driven by a current. An examination of HKC’s LCM/LCD model no. HKM238FJ02/PN238CT02-14 and Koorui’s monitor model no. 24N1 comprising HKC’s power supply board model no. HKCMNT NT68830-B and the AP3160 chipset demonstrate this:




https://en.eeworld.com.cn/news/qrs/eic664339.html

135. The products accused of infringing the ’830 patent comprise a voltage source that drives the semiconductor light source. An examination of HKC’s LCM/LCD model no.

HKM238FJ02/PN238CT02-14 and Koorui's monitor model no. 24N1 comprising HKC's power supply board model no. HKCMNT NT68830-B and the AP3160 chipset demonstrate this:







https://en.eeworld.com.cn/news/qrs/eic664339.html

136. The products accused of infringing the '830 patent comprise an output voltage controlling section that controls a drive current value for driving the semiconductor light source

by controlling an output voltage of the voltage source. For example, the Accused Products include an output voltage controlling section in the AP3160 chipset shown below that controls an output voltage of the voltage source, thereby controlling a drive current value for driving the semiconductor light source. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset[11] because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight of a monitor, such that each of the AP3160 chipset and the OB3350 chipset is configured such that it controls (via control logic) an output voltage of a voltage source (with a gate and isense terminals as a part of a boost convertor) thereby controlling a drive current value for driving the semiconductor light source.




https://www.datasheet-pdf.info/attach/1/4578548135.pdf

[11] The OB3350 chipset document referenced in this Count is marked as Confidential, but it is a public document publicly accessible at https://www.datasheet-pdf.info/attach/1/4578548135.pdf (last accessed August 18, 2026).




https://en.eeworld.com.cn/news/qrs/eic664339.html

137. The products accused of infringing the ’830 patent comprise an output current detecting section that detects an output current of the semiconductor light source. On information and belief, the AP3160 chipset included in the Accused Products is configured such that each comprise an output current detecting section that detects an output current of the semiconductor light source. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight of a monitor, such that the AP3160 chipset (and the OB3350 chipset) is configured such that it comprises an output current detecting section that detects an output current of the semiconductor light source:







Output current detecting section

https://www.datasheet-pdf.info/attach/1/4578548135.pdf

138. The products accused of infringing the ’830 patent comprise a current command section that specifies a reference value of a drive current which is applied to the semiconductor light source. On information and belief, the AP3160 chipset included in the Accused Products is configured such that it comprises a current command section that specifies a reference value of a drive current which is applied to the semiconductor light source. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power

supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight, such that the AP3160 chipset and OB3350 chipset are configured such that each comprise a current command section that specifies a reference value of a drive current which is applied to the semiconductor light source:




https://www.datasheet-pdf.info/attach/1/4578548135.pdf

139. The products accused of infringing the ’830 patent comprise a current comparing section that compares the output current detected by the output current detecting section and the reference value specified by the current command section. On information and belief, the AP3160 chipset included in the Accused Products is configured such that it comprises a current comparing section that compares the output current detected by the output current detecting section and the reference value specified by the current command section. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets

designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight, such that each of the AP3160 chipsets are configured such that each comprise a current comparing section that compares the output current detected by the output current detecting section and the reference value specified by the current command section:




140. The products accused of infringing the '830 patent comprise an impedance detecting section that detects an impedance of the semiconductor light source. On information and belief, the AP3160 chipset included in the Accused Products is configured such that each comprise an impedance detecting section that detects an impedance of the semiconductor light source. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are

compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, each drive a plurality of channels of LEDs of the backlight, such the AP3160 chipset and the OB3350 chipset are configured such that each comprise an impedance detecting section that detects an impedance of the semiconductor light source:




https://www.datasheet-pdf.info/attach/1/4578548135.pdf

141. The products accused of infringing the ’830 patent are configured such that the output voltage controlling section controls the output voltage of the voltage source based on an output of the current comparing section and an output of the impedance detecting section. On information and belief, the AP3160 chipset included in the Accused Products is configured such that the output voltage controlling section controls the output voltage of the voltage source based on an output of the current comparing section and an output of the impedance detecting section. Aside from an application schematic, no publicly available information of the AP3160 chipset, including the functional block diagram of the AP3160 chipset, exists. On information and belief, the AP3160 chipset is configured to perform the same functionality as the OB3350 chipset because

each are power supply chipsets designed to drive the LEDs of the backlight of an LCM and each are compatible replacement parts for one another. *See, e.g.*, https://en.eeworld.com.cn/news/qrs/eic664339.html. The AP3160 chipset, as well as the OB3350 chipset, drives a plurality of channels of LEDs of the backlight, such that each of the AP3160 chipset and OB3350 chipset is configured such that the output voltage controlling section controls the output voltage of the voltage source based on an output of the current comparing section and an output of the impedance detecting section:







https://www.datasheet-pdf.info/attach/1/4578548135.pdf

142. At a minimum, Defendants have known of the ’830 patent and their infringement at least as early as the filing date and/or service date of this original complaint. At a minimum, each of the Defendants has known about the ’830 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the

patent owner of the ’830 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC’s infringement of the ’830 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the “Company”) of the Company’s infringing activity of the ’830 patent via the Company’s making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the ’830 patent and other patents in its portfolio to abate the Company’s infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the ’830 patent from at least the foregoing dates that HKC Overseas was on notice of the ’830 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[12]

143. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants’ competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products),

---

[12] *See* FN 2, *supra.*

including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

144. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, the Defendants have actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’830 patent to use, offer for sale, sell, use, and/or import the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’830 patent. The Defendants intend to cause, and has taken affirmative steps to induce infringement by its distributors, importers, testing outfits, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or

services for these products to these purchasers in the United States. As just one example, the Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking its Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, the Defendants have actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused power supply boards and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., TVs, laptops, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the components have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/.

145. On information and belief, despite having knowledge of the ’830 patent and its infringement, the Defendants specifically intended for others to import and sell products accused of infringing the ’830 patent. For example, the Defendants specifically intended for its U.S.-based subsidiaries or customers to import and sell products accused of infringing the ’830 patent. On information and belief, the Defendants instruct and encourage the importers to import and/or sell products accused of infringing the ’830 patent. On information and belief, the purchase and sale agreements between the Defendants and the importers provide such instruction and/or encouragement. Further, on information and belief, the Defendants’ U.S.-based subsidiaries exist

for inter alia, the purpose of importing and selling products accused of infringing the ’830 patent in the United States.

146. The Defendants’ infringement of the ’830 patent has been willful and with full knowledge of the ’830 patent. Upon information and belief, despite having knowledge of the ’830 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the ’830 patent, the Defendants have nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. The Defendants’ infringing activities relative to the ’830 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

147. Plaintiff has been damaged as a result of the Defendants’ infringing conduct described in this Count. The Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants’ infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

148. On information and belief, the prior patent owners of the ’830 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for the Defendants’ infringements of the ’830 patent.

## **CONCLUSION**

149. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of the Defendants’ wrongful acts in an amount subject to proof at trial, which,

by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

150. Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

1. A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;
2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;
3. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;
4. A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;
5. A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: August 18, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Justin Kimble
Texas Bar No. 24036909
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 North Harwood Street
Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
justin@nelbum.com
bill@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

Attorneys for Plaintiff
**BISHOP DISPLAY TECH LLC**